Filed 1/26/21  P. v. Reyes CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFREDO E. REYES,<br><br>    Defendant and Appellant. | B304108<br><br>(Los Angeles County<br>Super. Ct. No. BA120197) |

APPEAL from an order of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Alfredo Reyes challenges the trial court's summary denial of his petition for resentencing under Penal Code section 1170.95.[1] To be eligible for relief under the statute, a defendant must make a prima facie case that he was convicted of murder under the natural and probable consequences doctrine, or of felony murder in a case in which he either was not a major participant in the felony or did not act with reckless indifference to human life. (See *People v. Allison* (2020) 55 Cal.App.5th 449, 460-462, review denied Dec. 23, 2020, S265450 (*Allison*); *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1139-1140, review granted Oct. 14, 2020, S264284 (*Galvan*).)

Reyes contends the trial court erred in denying his petition because he established a prima facie case for relief by alleging he was not the actual killer and was prosecuted as an aider and abettor to felony murder. We disagree and affirm.

At Reyes's 1997 trial, the jury found true a felony murder special circumstance allegation under section 190.2, subdivision (a)(17), which required proof of the same elements that all felony murder charges must meet under current law. Therefore, Reyes is ineligible for resentencing under section 1170.95 as a matter of law. Reyes's remaining arguments are without merit.

## FACTUAL AND PROCEDURAL SUMMARY

In an unpublished opinion involving Reyes's direct appeal (*People v. Reyes* (June 29, 1998, B114256)), we described the facts of the case as follows.

"At about 11:30 p.m. on August 2, 1995, Reyes and a cohort entered the Club Casbah bar and told those present, 'This is a

---

[1] Subsequent statutory references are to the Penal Code.

robbery, everyone down on your knees, give me all your money.' Reyes then fired a rifle, wounding an employee (Priscilla Villalobos), who fell to the floor. Robert Hirtle (a patron) saw Reyes point his rifle toward the ceiling and saw Villalobos fall. Hirtle, his eye on Reyes (who was wearing a baseball cap backwards and a bandanna covering the lower part of his face), put his wallet on the bar, then continued to watch as Reyes took money from two other patrons while Reyes's cohort went to the cash register. When the perpetrators left, one was overheard telling the other, 'you should have fucking shot them all.' An expended .22-caliber casing was found at the scene.

"At about 1:45 a.m. on August 5, Reyes and a cohort entered the Kopper Keg. Olga Gutierrez (an employee who was behind the bar) heard gunshots, looked up, and saw two men with their faces partially covered. While the man with the rifle stayed at the entrance, Reyes (gun in hand) approached Gutierrez, said it was a robbery, and asked for the money in the cash register. When Gutierrez told him to take the money himself, Reyes threatened to kill her, then shot her in the arm. Reyes then jumped over the bar, grabbed another employee (Joaquin Lopez) by the shirt, put his gun to the back of Lopez's neck, and told Lopez to open the cash register. Lopez complied, and Reyes took $80, then jumped back over the bar. Gutierrez heard another shot and saw Antonia Gonzalez fall (she died at the scene from a single gunshot wound). Five .22-caliber casings were found at the scene.

"At about 8:20 p.m. on August 5, Reyes and Anthony Rognlie entered Topper's Bar. Reyes quickly approached Jose Guarderas (the bartender), jumped over the bar, took out a handgun, pointed it at Guarderas, and took money from the cash

3

register.  Rognlie, with a bandana on his head and a .22-caliber rifle in his hand, told everyone to get down.  John Kowalski (a customer) saw Rognlie holding the rifle and also saw the culprits run out together.

"Reyes was identified by Hirtle (at a photo lineup) as one of the perpetrators at the Club Casbah, by Guarderas (at a live lineup) as one of the perpetrators at Topper's, and by Gutierrez (following a live lineup) as resembling one of the perpetrators at the Kopper Keg. . . .  At trial, the People presented evidence of the facts summarized above, plus evidence that Reyes and Rognlie lived at separate locations in the vicinity of the Club Casbah, and that the three bars were located within three miles of each other.  A criminalist testified that the casings recovered at the Club Casbah and the Kopper Keg were fired from the same firearm.  Hirtle and Guarderas identified Reyes with certainty, and Gutierrez testified that Reyes 'resemble[d]' one of the robbers." (*People v. Reyes*, *supra*, B114256.)

In 1997, a jury convicted Reyes of murder (§ 187, subd. (a)), three counts of robbery (§ 211), and two counts of assault with a firearm (§ 245, subd. (a)(2)).  The jury also found true the special circumstance allegation that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)).

The verdict form indicates the jury found Reyes guilty of murder, but it did not include a finding that the crime was first or second degree murder.  The prosecutor conceded this was a drafting error.  As a result, the murder was deemed to be second degree murder by operation of law.  (See § 1157.)  The trial court sentenced Reyes to 15 years to life for second degree murder, plus 38 years on the remaining charges.

We affirmed the conviction. Our decision did not address any issues related to the special circumstance finding.

In March 2019, Reyes petitioned for resentencing under section 1170.95. He alleged that he was prosecuted under a now-invalidated theory of felony murder. He also requested the appointment of counsel. On December 16, 2019, on considering a response filed by the People, and without appointing counsel, the trial court summarily denied the petition in a brief order that found Reyes ineligible for resentencing "because he was the actual killer."

Reyes timely appealed.

## DISCUSSION

### A.  Senate Bill No. 1437 and Section 1170.95

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.), which eliminated the natural and probable consequences doctrine in cases of murder, and limited the application of the felony-murder doctrine. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, review granted Mar. 18, 2020, S260493 (*Verdugo*).) The legislation also enacted section 1170.95, which provides a vehicle for persons who were convicted of murder pursuant to a now-invalidated theory to petition to have their conviction vacated and to be resentenced. (*Ibid.*; see § 1170.95, subd. (a).)

A person convicted of felony murder may petition the trial court for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial

5

or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶] (3) *The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.*"  (§ 1170.95, subd. (a), italics added.)

To obtain relief, a defendant must file a declaration affirming that he is eligible for resentencing under the new law.  (See § 1170.95, subd. (b)(1).)  The trial court considers the petition according to a three-step process.  First, the court "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section."  (§ 1170.95, subd. (c).)  This is "a preliminary review of statutory eligibility for resentencing," akin to an initial review of a petition for resentencing under Propositions 36 and 47.  (*Verdugo, supra,* 44 Cal.App.5th at p. 329.)  "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner."  (*Ibid.*)

If the petition survives this first stage of review, the court must appoint counsel if the petitioner has so requested.  (§ 1170.95, subd. (c).)  The prosecutor then files a response, and the petitioner may file a reply.  The review at this stage "is equivalent to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings, which typically follows an informal response to the habeas corpus petition by the Attorney General and a reply to the informal response by the petitioner."  (*Verdugo, supra,* 44 Cal.App.5th at p. 328.)  Under this standard, "[i]f the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall

6

issue an order to show cause" and conduct an evidentiary hearing. (§ 1170.95, subds. (c) and (d).)

"[I]f the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330.)

## B.  Reyes Is Ineligible for Resentencing

Senate Bill No. 1437 amended section 189 to authorize a conviction for felony murder only if the defendant was the actual killer, aided and abetted in a first degree murder with the intent to kill, or was a major participant in the underlying crime who acted with reckless indifference to human life. (*Verdugo, supra*, 55 Cal.App.4th at p. 326; see § 189, subd. (e).) "These are identical to the requirements of a felony-murder special circumstance now and in 1997" at the time of Reyes's trial, as reflected in the instructions received by the jury in his case. (*Allison, supra*, 55 Cal.App.5th at p. 457.) Thus, as in *Allison*, the special circumstance finding shows as a matter of law that Reyes still could be convicted of felony murder even under the newly amended version of section 189, and prevents Reyes from making a prima facie case that he is eligible for resentencing. (*Ibid.*)

Reyes argues that he is eligible for resentencing due to changes in the law regarding special circumstance allegations. In 2015 and 2016, the California Supreme Court clarified the circumstances under which a defendant could be deemed a major

7

participant in an underlying felony who acted with reckless indifference to human life. (*People v. Clark* (2016) 63 Cal.4th 522 (*Clark*); *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).) Reyes contends that special circumstance findings which predate *Banks* and *Clark* are eligible for resentencing relief under section 1170.95.

We rejected this argument in *Galvan* and *Allison*, and decline to revisit those decisions here. The argument that pre-*Banks*/*Clark* special circumstance findings are not sufficient to preclude resentencing under section 1170.95 fails because it does not depend on Senate Bill No. 1437's changes to the felony-murder rule. Rather, as we concluded in *Galvan* and *Allison*, it depends on "the clarification of the requirements for the special circumstance finding in *Banks* and *Clark,*" and not " 'because of changes' made by Senate Bill No. 1437." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142; see § 1170.95, subd. (a)(3); accord, *Allison*, *supra*, 55 Cal.App.5th at p. 458.)

Where, as here, "the prior [special circumstance] finding shows the petitioner meets the requirements for murder liability under amended sections 188 and 189, then it is not true that the petitioner could not be convicted of murder because of the changes to sections 188 and 189, and the petition must be denied." (*Allison*, *supra*, 55 Cal.App.5th at pp. 461-462, italics omitted.)

Reyes next argues that we must disregard the jury's robbery special circumstance finding under section 190.2, subdivision (a)(17), because there was no first degree murder conviction to which the special circumstance finding lawfully could attach. The lack of a jury finding of first degree murder does not by itself demonstrate that Reyes is entitled to

resentencing under section 1170.95. Reyes was not convicted of first degree murder due to an error in drafting the verdict form; not " 'because of changes' made by Senate Bill No. 1437." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142.) "By finding a special circumstance allegation true, the jury ma[de] precisely the same finding it must make in order to convict a defendant of felony murder under the new law." (*Id.* at p. 1141.) This finding is left undisturbed and remains valid, even though the trial court was unable as a matter of law to impose sentence consistent with the finding. Based on this finding, Reyes could still be convicted of murder, and thus he is ineligible as a matter of law to have his murder conviction vacated. (*Ibid.*; accord, *Allison*, *supra*, 55 Cal.App.5th at p. 457.)

Finally, Reyes argues we must reverse because the trial court based the denial of his petition on its erroneous finding that he was the "actual killer." He notes that our opinion on direct appeal did not determine the identity of the actual killer, but rather inferred it was not Reyes. He also references our decision on direct appeal by his codefendant, Rognlie, in which we stated that an "unidentified man shot and killed Antonia Gonzales." (*People v. Rognlie* (June 29, 1998, B115889) [nonpub. opn.].)

We need not decide whether the trial court erred in finding that Reyes was the actual killer. " ' " '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" [Citation.]' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 972.) Because Reyes's petition

was correctly denied for the reasons explained above, this argument fails.

## C.    Appointment of Counsel

Reyes also argues the trial court's failure to appoint counsel is structural error that requires reversal because a petitioner under section 1170.95 is entitled to the appointment of counsel once the trial court asks for briefing from the People.  (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 330 ["if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief"]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, review granted Mar. 18, 2020, S260598 [the requirement to appoint counsel arises "after the court determines that the petitioner has made a prima facie showing that [the] petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether [the] petitioner has made 'a prima facie showing that he or she is entitled to relief' "].)

While we agree with Reyes that the trial court should have appointed counsel after it asked for briefing from the People, we do not agree that it amounts to structural error.  Rather, the trial court's failure to appoint counsel after accepting briefing from the People and prior to the issuance of an order to show cause is subject to review for harmless error.  (See *People v. Daniel* (2020) 57 Cal.App.5th 666, petn. for review pending, petn. filed Dec. 29, 2020, S266336; *People v. Law* (2020) 48 Cal.App.5th 811, 826,

review granted July 8, 2020, S262490.)  Here, the trial court's error was "harmless under any standard of review."  (*People v. Edwards* (2020) 48 Cal.App.5th 666, 675, review granted July 8, 2020, S262481, citing *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 795] [constitutional error] and *People v. Watson* (1956) 46 Cal.2d 818, 836 [state law error]; see also *Daniel, supra,* at p. 678 [applying harmless error standard under *Watson*]; *Law, supra,* at p. 826 [applying harmless beyond a reasonable doubt standard under *Chapman*].)  Had counsel been appointed below, the result would be no different.  As noted *ante*, Reyes failed to demonstrate eligibility under the statute.  Moreover, "[h]is arguments contesting that failure have all been fairly presented by his appellate counsel, and an appellate record preserved."  (*People v. Swanson* (2020) 57 Cal.App.5th 604, 618, petn. for review pending, petn. filed Dec. 24, 2020, S266262.)

## DISPOSITION

The trial court's order is affirmed.
NOT TO BE PUBLISHED

FEDERMAN, J.\*

We concur:

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

ROTHSCHILD, P. J.          BENDIX, J.